UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,

        Plaintiff,

vs.  Case No. 2:18-cv-02170

CAMELOT COURT, LLC,
a Kansas limited liability company

        Defendant.
_____/

# COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, CAMELOT COURT, LLC, a Kansas limited liability company (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

2. Defendant's property, Camelot Court Shopping Center, is located at 11721 Roe Avenue, Leawood, Kansas 66211, in Johnson County.

3. Venue is proper in the District of Kansas because the situs of the property lies in this judicial district. The Defendant's property is located in and does business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.  See also 28 U.S.C. § 2201 and § 2202.

5. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6. Mr. Nekouee travels to the Kansas City metropolitan area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

7. Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the property which forms the basis of this lawsuit on March 28th and 29th, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment auction, heavy equipment dealerships, and to the home of his uncle and cousin whom he visits in the Kansas City metropolitan area.

8. Mr. Nekouee enjoys the food and beverages at the Cactus Grill and he buys food and grocery items while visiting the Kansas City metropolitan area.

9. The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms at the Camelot Court.

10. Defendant owns, leases, leases to, or operates a place of public accommodation as

defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA. The place of public accommodation that the Defendant owns, operates, leases or leases to is known as Camelot Court located at 11721 Roe Avenue, Leawood, Kansas 66211 ("Camelot Court").

11.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 13 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Fred Nekouee desires to visit the Camelot Court not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

12.    The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

13.    The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). Preliminary inspections of the Camelot Court have shown that violations exist. The violations that Fred Nekouee personally encountered or observed on his visit to the Camelot Court include, but are not limited to:

**PARKING**

a. In the parking lot in front of Great Clips and Glitters Fine Jewelry, there are no parking spaces for disabled patrons with van accessible signage in violation of Federal Law 2010 ADAAG §§ 208.2.4 and 502.6.

b. In the parking lot in front of Glitters Fine Jewelry, the parking space for disabled patrons has an excessively steep running slope, as steep as 1:33.3 (3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

c. In the parking lot in front of the Henhouse, the parking space for disabled patrons has an excessively steep cross slope, as steep as 1:26.3 (3.8%), which slope is steeper than the allowed maximum slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

d. In the parking lot in front of Glitters Fine Jewelry and Great Clips, the running slope of the access aisle serving the disabled parking spaces is 1:33.3 (3%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

e. In the parking lot in front of Massage Envy, the cross slope of the access aisle serving the disabled parking spaces is as steep as 1:20.8 (4.8%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

f. The running slope of the walking surface (sidewalk) near the entrance to the Camelot Court Animal Clinic is 1:12.3 (8.1%), which slope exceeds the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010 ADAAG § 403.3.

g. The cross slope of the walking surface (sidewalk) near the entrance to Henhouse is 1:24.4 (4.1%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation

of Federal Law 2010 ADAAG § 403.3.

### CACTUS GRILL ENTRANCE DOOR

h.  The door force needed to open the Cactus Grill restaurant door is 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

### HENHOUSE MEN'S RESTROOM

i.  In Henhouse, the door force needed to open the men's restroom door is 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

j.  In Henhouse, the men's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by a trash can and is 8 inches less than the minimum clearance of 18 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.

k.  In Henhouse, the men's restroom urinal clear floor space width is 31 inches, which width is less than the minimum required width of 36 inches to an alcove urinal (confined on all or part of three sides where the depth exceeds 24 inches), in violation of Federal Law 2010 ADAAG §§ 305.7.1 and 305.7.2.

l.  In Henhouse, the accessible toilet compartment door clearance up to the wall is 36 inches in the men's restroom, which clearance is less than the minimum required width of 42 inches, in violation of Federal Law 2010 ADAAG 604.8.1.2.

### CACTUS GRILL MEN'S RESTROOM

m. In the Cactus Grill, the door force needed to open the men's restroom door is 7 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

n. In the Cactus Grill men's restroom, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 11 inches (blocked by trash can), which clearance is less than the required minimum clearance of 18 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.

o. In the Cactus Grill men's restroom, the lavatory clear floor or ground space width is 23 inches (blocked by trash can), which clear width is less than the required minimum width of 30 inches, in violation of Federal Law 2010 ADAAG §§ 606.2 and 305.5.

p. In the Cactus Grill men's restroom, the paper towel dispenser outlet is 58 inches above the finished floor and the motion sensor thereon does not work at a distance of more than 3 inches, which effective height is outside the reach range of an individual in a wheelchair of a minimum of 15 inches (380 mm) to a maximum of 48 inches (1220 mm) above the floor, in violation of Federal Law 2010 ADAAG § 308.2.1.

**HENHOUSE WOMEN'S RESTROOM**

q. In the Henhouse, the door force needed to open the women's restroom door is 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

r. In the Henhouse women's restroom, the door pull side maneuvering clearance in a latch approach to the doorway is 41 inches and is blocked by a trash can, which clearance

6

is less than the minimum required clearance of 48 inches, in violation of Federal Law ADAAG § 404.2.4.

s. In the Henhouse women's restroom, the paper towel dispenser is 52 inches above the finished floor, which height is outside of the reach range of an individual in a wheelchair of a minimum of 15 inches (380 mm) and a maximum of 48 inches (1220 mm) above the floor, in violation of Federal Law 2010 ADAAG § 308.2.1.

t. In the Henhouse women's restroom, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010 ADAAG § 604.8.1.2.

**CACTUS GRILL WOMEN'S RESTROOM**

u. In the Cactus Grill, the door force needed to open the women's restroom door is 8 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

v. In the Cactus Grill, women's restroom, the door pull side maneuvering clearance in a front approach perpendicular to the doorway is 38 inches and is blocked by a trash can, which clearance is less than the required minimum clearance of 60 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.

w. In the Cactus Grill, women's restroom, the paper towel dispenser is 54 inches above the finished floor and the motion sensor thereon does not work at a distance of more than 3 inches, which effective height is outside the reach range of an individual in a wheelchair of a minimum of 15 inches (380 mm) and a maximum of 48 inches (1220 mm) above the floor, in violation of Federal Law 2010 ADAAG § 308.2.1.

      x. In the Cactus Grill, women's restroom, the rear wall grab bar only extends 10 inches and 26 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.

      y. In the Cactus Grill, women's restroom, the water closet or toilet does not have the flush control mounted on the open side of the clear floor space, in violation of Federal Law 2010 ADAAG § 604.6.

14. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

15. The discriminatory violations described in paragraph 13 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

16. Defendant has discriminated against the individual by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

17. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

18. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

19. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was

designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

20. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

21. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Camelot Court and adjacent parking lot spaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such

steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

    c.     An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

    d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Kansas City, Kansas as the place of trial for this action.

                        Respectfully submitted,

                        s/Robert J. Vincze_____
                        Robert J. Vincze (KS #14101)
                        Law Offices of Robert J. Vincze
                        PO Box 792
                        Andover, Kansas 67002
                        Phone: 303-204-8207
                        Email: vinczelaw@att.net

                        *Attorney for Plaintiff Fred Nekouee*